UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6



**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-02767 ABC (FMOx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | Zamacona v. Ayvar et al. | | |

| Present: The Honorable | Audrey B. Collins | |
|---|---|---|
| Daphne Alex | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:     GRANTING MOTION FOR SUMMARY JUDGMENT** (In Chambers)

### I.   INTRODUCTION

Plaintiff Jose Manuel Zamacona, along with Defendants Johnny Ayvar and Bruno Ayvar were members of the musical group "Los Yonics." Since its inception in the 1970s, "Los Yonics" grew to become a successful and popular group in both Mexico and the United States. However, by 1999 Zamacona and Johnny Ayvar (Ayvar) were the only remaining members.  In 1999, Zamacona and Ayvar went their separate ways.  However, Zamacona's "way" was to continue performances using the "Los Yonics" name.  From April 2000 to January 2007 Ayvar did not conduct any musical performances or make any recordings using "Los Yonics," while during this same time period Zamacona performed, toured and released sound recordings using "Los Yonics."  Then, in early 2007, Ayvar decided to form a group headed by Bruno Ayvar with the name "Los Yonics de Johnny y Bruno Ayvar: La Nueva Generacion." Johnny and Bruno Ayvar's group then began touring under the "Los Yonics" name, charging rates substantially less than Zamacona's rates.

Zamacona filed suit for trademark infringement.  Ayvar counterclaimed for trademark infringement, false designation of origin and unfair competition.[1]  Zamacona moved for summary judgment on his infringement claim and, on December 1, 2008, the Court ruled that

---

[1]The Counterclaims were brought by both Johnny Ayvar and Bruno Ayvar. However, because Bruno Ayvar does not claim to have any ownership in the "Los Yonics" name (MSJ Order at 3), this order focuses on Johnny Ayvar's rights in the mark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6



### CIVIL MINUTES - GENERAL

| Case No. | CV 07-02767 ABC (FMOx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | Zamacona v. Ayvar et al. | | |

Zamacona holds the right to use the "Los Yonics" mark in conjunction with live performances. (MSJ Order (Docket No. 87) at 8.) Despite this ruling, Ayvar continues to pursue the counterclaims, on which Zamacona now moves for summary judgment. For the reasons discussed below, Zamacona's motion is **GRANTED**.

## II.  DISCUSSION

The Court examines each of Ayvar's claims in the sections that follow. The Court declines to re-state the facts already found in the MSJ Order, which apply just as equally here. (MSJ Order at 3-4.) To the extent there are additional facts relevant to the present motion, they are cited in the text below.

### A.  FIRST CLAIM: INFRINGEMENT UNDER 15 U.S.C. § 1114

Ayvar's first claim is for trademark infringement in violation of 15 U.S.C. § 1114. However, § 1114 pertains to registered marks. The counterclaim identifies a trademark with registration number 77,096,387, but this number is actually the serial number for an **application** not a registered mark. (See TARR Status, Serial No. 77,096,387 (available at http://tarr.uspto.gov/).) Ayvar does not have a registered mark on which to bring a claim under § 1114. Accordingly, the Court **GRANTS** Zamacona judgment on Ayvar's first claim for relief.

### B.  SECOND CLAIM: FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

This claim is premised on Zamacona's "unauthorized use of the 'Los Yonic's mark.'" (Counterclaims (Docket No. 11) at 10-11.) However, the Court has already ruled that Zamacona has the right to use the "Los Yonics" mark in conjunction with live performances. (MSJ Order at 8.) This ruling was based on Ayvar's abandonment of rights.

To the extent there could be confusion as to Zamacona's sound recordings under the "Los Yonics" mark, Ayvar now claims that his "intent in 1999 was to discontinue use of the mark in connection with a performing musical group, but not as to its use on the packaging and sale of sound recordings." (Opp. (Docket No. 90) at 6.) Here, Ayvar argue that sales from 2000 to 2007 of "Los Yonics" records recorded before 2000 evidence continued use precluding a finding of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6



### CIVIL MINUTES - GENERAL

| Case No. | CV 07-02767 ABC (FMOx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | Zamacona v. Ayvar et al. | | |

abandonment.[2]

    Even if Ayvar presented evidence of sales of old "Los Yonics" albums, that would not overcome the evidence of abandonment.  The Patent and Trademark Office has, on more than one occasion, held that "[a] party cannot defend against a claim of abandonment by relying on some residual goodwill generated through post-abandonment sales of the product by distributors or retailers."  Parfums Nautee Ltd. v. American Int'l Indus., 22 U.S.P.Q.2d 1306, 1309 (Trademark Tr. & App. Bd. January 15, 1992); Societe des Produits Marnier Lapostolle v. Distillerie Moccia S.R.L., 10 U.S.P.Q.2d 1241, 1244 n. 5 (Trademark Tr. & App. Bd. Feb. 10, 1989); Drowning Pool LLC v. Drowning Pool, 2007 WL 2070917, at *4-9 (Trademark Tr. & App. Bd. July 11, 2007) (not precedential).

    Ayvar attempts to rely on Kingsmen v. K-Tel Int'l Ltd., 557 F. Supp. 178, 183 (S.D.N.Y. 1983) where, despite that plaintiffs disbanded a musical group and ceased recording music, the Southern District of New York found "the fact that these individuals continue to receive royalties for Kingsmen recordings flies in the face of any suggestion of intent to abandon use of the name Kingsmen."  However, in Kingsmen the plaintiffs did more than simply sit idly by while receiving royalties.  During the period of alleged abandonment, the plaintiffs promoted their previously recorded work and licensed their songs on various "oldies" collections.  Kingsmen, 557 F. Supp. at 182-183.  Furthermore, the plaintiffs brought suit when they learned of infringing use.

    This contrasts greatly with the facts here.  From 1999 until 2007, Johnny Ayvar had not performed with any musical group.  (SGI

---

[2]Technically, Ayvar has not submitted any evidence of sales from 2000 to 2007.  Ayvar filed two declarations, an original Spanish version (Docket No. 93) and an English translation (Docket No. 92), both of which attach what appear to be royalty statements.  However, the English version of Ayvar's declaration is incomplete.  The pages that presumably authenticate these records are missing.  Not surprisingly, Zamacona objects to this evidence.  (Docket No. 97.)  What is surprising, however, is that even after Zamacona objected to the incomplete record--identifying for Ayvar the specific error in Ayvar's filing--Ayvar still did not re-submit (or seek leave to re-submit) a complete translation of his declaration.  Regardless, even if the Court considers the putative royalty statements, as noted above, it does not alter the outcome.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6



**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-02767 ABC (FMOx) | Date | February 3, 2009 |
|----------|------------------------|------|------------------|
| Title | Zamacona v. Ayvar et al. | | |

(Docket No. 91) ¶ 18.)  Nor, in the past ten years, has Johnny Ayvar made any recordings.  (SGI ¶ 19.)  In 2000, Zamacona began performing with the "Los Yonics" mark.  (See SGI ¶ 20.)  From 2000 on, Ayvar was well aware that Zamacona was performing and recording using the "Los Yonics" mark.  (Ayvar July 22, 2008 Dep. Tr. at 56:19-59:10.)  Ayvar heard Zamacona on the radio, saw him on TV and saw his albums in record stores.  (Id.)  Yet, from April 2000 until 2007--a period of approximately seven years--there is no evidence that Ayvar took any action to stop Zamacona's use of the mark.[3, 4]  Ayvar abandoned any rights he may have had in the mark.  Accordingly, the Court **GRANTS** Zamacona judgment on Ayvar's second claim for relief.

**C.  THIRD AND FOURTH CLAIMS:  STATE LAW CLAIMS**

Ayvar's third and fourth causes of action are for common law unfair competition and violation of California Business & Professions Code § 17200.  "This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."  Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994).  As noted above, Ayvar abandoned his rights in the mark.  Zamacona, in turn, acquired the right to use the mark (and has even obtained a federal trademark registration).  In these circumstances, Zamacona's use of the mark cannot constitute unfair competition or a violation of § 17200.  Accordingly, the Court **GRANTS** Zamacona judgment on Ayvar's third and fourth claims for relief.

**III.  CONCLUSION**

For the reasons set forth above, Zamacona's motion is **GRANTED**.  Zamacona prevails on all of the counterclaims and the Court **GRANTS**

---

[3]Ayvar appears to have originally objected to Zamacona's use of the "Los Yonics" name but, aside from having his attorney send cease and desist letters in November 1999 and April 2000, did nothing.  (MSJ Order at 3.)

[4]Although the Court finds that Ayvar's failure to bring suit against Zamacona supports finding abandonment, a party's failure to prosecute typically sounds in laches.  See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838-840 (9th Cir. 2002) (upholding application of laches where party delayed seven years in bringing suit).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## JS - 6



**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-02767 ABC (FMOx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | Zamacona v. Ayvar et al. | | |

judgment in Zamacona's favor.[5]  The hearing previously scheduled for
February 9, 2009 is hereby **VACATED**.  Fed. R. Civ. P. 78; L.R. 7-15.
This order shall constitute notice of entry of judgment pursuant to
Rule 58 of the Federal Rules of Civil Procedure.[6]

    IT IS SO ORDERED.                                            _____ : _____

                                        Initials of      DA
                                        Preparer     _____

_____

    [5]Ayvar had a fifth counterclaim for declaratory relief which, premised
on the first four claims, falls with them.

    [6]Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this
order, and concomitant entry on the docket, as an entry of judgment.